UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

|  |  |  |
|---|---|---|
| | * | |
| CHARLES M. LLEWLYN, | * | |
| Petitioner, | * | DC DKT #00-6022-CR-DMM |
| | * | HABEAS CORPUS NO. 01-7796 |
| -versus- | * | |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

_____/

## PETITIONER'S NUNC PRO TUNC SECTION 2255 MOTION
## AND FOR FURTHER RELIEF PURSUANT TO TITLE 28 SECTION 2202

COMES NOW Charles M. Llewlyn, (hereinafter "Petitioner") in proper person, pro se, pursuant to Federal Rules of Civil Procedure 15(c) or in the alternative Title 28 Section 2202 and avering to the Court the following:

1. Petitioner filed his original petition for habeas relief on November 26,2001. **(DE#1)**

2. On December 17, 2001, by Court order the Government was ordered to show cause why petitioner's application should not be granted. **(DE#5)**

3. On January 11, 2002, petitioner filed a motion to supplement his Section 2255. **(DE#7).** By Order dated February 8, 2002, said motion was granted. **(DE#9)**

4. On Februray 12 and 15, 2002, the Government filed its response to petitioner's motion to Vacate, or Set Aside or Correct Sentence pursuant to Section 2255.

5. Petitioner timely filed his motion in opposition March 7, 2002.

**(DE#12)**

6. On March 20, 2002, petitioner filed a motion to compel discovery to fully litigate his claims. **(DE#13)**

7. On April 4, 2002, Magistrate Judge Sorrentino, denied petitioner's motion for discovery. **(DE#14)**

8. On April 14, 2002, petitioner objected to the denial of his motion to compel discovery and requested a duly authorized Article III judge to dispose of same. **(DE#15)**

9. On April 19, 2002, Magistrate Judge Sorrentino a non Article III judge again denied petitioner's motion for discovery. **(DE#16)**

10. On September 20, 2002, Magistrate Judge Sorrentino submitted her Report and recommendation, recommending motion be denied. **(DE#17)**

11. On October 18, November 15, 2002, petitioner filed his objection to the Magistrate Report and Recommendation. **(DE#18 & 23)**

12. On November 27, 2002, the Hon. Judge Donald M. Middlebrooks adopted the reasoning of the Magistrate Report and Recommendation.

13. Petitioner's motion for a certificate of appealability was subsequently denied. **(DE#32)**

14. Petitioner thereafter requested a Certificate of Appealablity from the Eleventh Circuit of Appeals, which was again denied. **(DE#34)**

15. In or about early 2003 petitioner initiated a Freedom of Information request to the Executive Office of United States Attorneys' and the Drug Enforcement Agency requesting documents to conclusively show that the Governmnet perpetuated a **FRAUD** upon the Court in knowingly presenting perjured testimony to the Magistrate Judge to secure petitioner's arrest and presenting perjured testimony

2

to the grand jury to secure petitioner's indictment.

16. On or about September 3, 2004, petitioner was served via certified registered mail by the Drug Enforcement Agency conclusively showing that the Government perpetuated a **FRAUD** upon both the trial court and the habeas court in failing to advise the Court of the petitioner's claim that the Government had permeated the proceedings with perjury.

## ARGUMENT AND CITATION OF AUTHORITY

Petitioner presents three claims in this petition to the Court. The claims herein were previously presented either directly or by express implication and hence or not new issues but correctly relates back to the original petition. See **Davenport v United States, 217 F.3d 1341 (2000).** In addition the issues presented herein were never address on the merits or was incorrectly decided. Petitioner respectfully advances the following issues for the Courts review:

**(i)** Governmnet perpetuated a fraud upon the Court and secured petitioner's conviction based on perjured testimony in violation of petitioner's due process rights;

**(ii)** The Governmnet breach the plea agreement as understood by petitioner which voids the contract.

**(iii)** The Court misapplied the clear dictate of Apprendi, which was decided before adjudication of guilt and petitioner's conviction became final as clarified by Blakely v Washington, 124 S.Ct. 2531 (2004).

## FRAUD UPON THE COURT

Any fair and just review by this Court of the record will conclusively show that Agent James Barnick in a sworn affidavit

3

to Magistrate Judge Snow avered in paragraph 8 that he recovered one kilogram of cocaine. See **(Criminal Docket 00-6022-CR-DMM, DE#1).** A further just in camera review of the grand jury proceedings will again attest to the fact that Agent James Barnick and AUSA Roger Steffin made false and misleading statements to the grand jury, to-wit "a kilogram of cocaine was recovered." Knowing such facts to be false and false information which could have formed the basis upon which one or more of the grand jurors voted to indict. Critical to this motion is the newly discovered evidence that have recently being access by petitioner by and through the Freedom of Information. The information in this case is the laboratory report which conclusively states that the suspected cocaine was not cocaine as sworn to by Agent Barnick. **See Exhibit A.**

At all times relevant to the proceedings the government knew that Agent Barnick presented perjured testimony to a judicial officer and the grand jury and made no effort to inform the Court of such thus violating petitioner's due process rights not to be convicted on perjured testimony.

In Brady v United States, 397 U.S.472 (1970) the Supreme Court carved out an exception as to when a plea could not be voluntary made being, "misrepresentation or other impermissible conduct by State agents." (internal cites and quotation omitted). Clearly the knowing use of perjury to secure one's conviction is impermissible conduct by State agents. In fact, courts have consistently held, "knowing reliance of perjured testimony by prosecutor is of such significance affecting substantial rights that such claims are cognizable un a Section 2255 claim. See United States v Biberfield, 957 F.2d 98 (2nd Cir. 1992)

From as far back as <u>Napue v Illinois</u>, 360 U.S. 264 (1959), the Supreme Court has noted that the prosecution's used of known false testimony at trial required a reversal of petitioner's conviction. Applying this logic the same result must maintain when the Governmnet allows a defendant to stand trial on an indictment which it knows to be based on perjured testimony. The consequences to the defendant of perjured testimony given before the grand jury are no less severe than those of perjured testimony given at trial, and in fact more severe. The defendant has no effective means of cross-examination or rebutting perjured testimony given before the grand jury, as he might in court. (internal citations and quotations omitted).

In light of the newly discovered evidence as presented herein, evidence which was in the government's possession at all times, requested via discovery and denied. Petitioner contends that the Government perpetuated a **FRAUD** upon the district court and violated petitioner's due process rights. As such, petitioner requests an evidentiary hearing on this issue or any other relief deem just and proper.

### BREACH OF AGREEMENT

Petitioner advances this issue as impliedly reference in his original petition as "appellate counsel was ineffective for failure to raise the issue that the government breach the plea agreement." The record ably supports petitioner's position. On May 11, 2000, petitioner and counsel appeared before the district court for change of plea. The following colloquy ensued:

5

The Court: We have reviewed this written plea agreement.
Beyond this agreement, has the government
promised you you anything else in connection
with your case?

Mr. Horowitz: Judge, if I may, Mr. Oddman also has a
proffer agreement, or limited-use-immunity
type agreement with the governmnet. It
wasn't an inducement for him to plead guilty
and it is not part of the plea. However, it
is another agreement and kind of in the gray
area. I figured it would be better safe than
sorry to make the Court aware of this.

The Court:  All Right.

The Court: Mr. Oddman, you have heard your lawyer mention,
in addition to the terms of the written plea
agreement, there is a -- the government has a
limited-use-immunity agreement with you, with
respect to some issues, and has also agreed not
to oppose a Rule 20 transfer from the Western
District of -- where?

Mr. Horowitz: North Carolina, Your Honor.

The Court: -- of North Carolina.
Besides those matters, and this written agreement
are there any other promises to you in connection
with this case?

The Defendant: No, Your Honor.


The governmnet is bound by any material promises it makes

to a defendant as part of a plea agreement that induces the defendant

to plead guilty. Santobello v New York, 404 U.S. 257 (1971): United

States v Johnson, 132 F.3d 628 (11th Cir.1998). Whether the government

violated the agreement is judged accordingly to the defendant's

reasonable understanding at the time he entered the plea. United

States v Taylor, 77 F.3d 368 (1996).

    The record in the case sub judice is clear that at the time

the petitioner entered the plea he did so with the full understanding

that the government was going to give him the opportunity to co-operate.

This fact is further attested by correspondence counselor forwarded

to the government indicating that petitioner was available for

debriefing.

As such its beyond dispute that the government violated the plea as understood by the petitioner. In the instant case sub judice while "specific performance" would be the remedy due to the passage of time and any information that petitioner had would have become stale, specific performance in this case would be futile. Hence in the interest of justice petitioner should be allowed to plead anew.

## MISAPPLICATION OF APPRENDI

In petitioner's original petition, as one of the enumerated grounds for relief was that the trial court impermissibly inserted five kilograms of cocaine into his indictment when such facts were never found by nor presented to the grand jury. It was further argued that by the court making such findings the court violated petitioner's Sixth Amendment rights.

The record will bear light to petitioner's claim that in his objection to the Pre-Sentence Report he objected to the quantity determination by the Probation Department and argued that as Apprendi dictates petitioner was only subjected to the lowest base level appearing in the Sentencing Guidelines being a level 12. The Court denied petitioner's objection, instead finding petitioner responsible for 5 kilograms.

In light of the Supreme Court recent ruling in Blakely v Washington, 124 S.Ct. 2531 (2004), which clarified its previous holding in Apprendi v New Jersey, 530 U.S. 466 (2000), makes it abundantly clear that the Court previous holding that petitioner's Sixth Amendment rights was not violated was respectfully incorrectly decided.

In <u>Blakely</u> the Court reasoned that the Due Process Clause and the Sixth Amendment right to a jury trial "idisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime in which he is charged beyond a reasonable doubt.'" **Id at 477, 120 S.Ct 2248** (Internal citations omitted).

Further, in Ring v Arizona, the Court struck down a statute on the basis of Apprendi, stating that "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact -no matter how the State labels it-must be found by a jury beyond a reasonable doubt .... A defendnat may not be 'expose[d] ... to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone.'" **536 U.S. 584, 602 (2002)**(internal citations omitted). In Blakely, the Court applied this precedent to the Washinton state guideline scheme, explaining:

> our precedents make clear ... that the "statutory maximum" for Apprendi pursposes is the maximum sentence a judge may impose **solely on the basis of the facts reflected in the verdict or admitted by the defendant** ... In other words,the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury;s verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punsihment ... and the judge exceeds his proper authority.

**124 S.Ct. at 2536 (empahsis in original).**

Thus, the rule of Apprendi, as explained in Ring and now Blakely, establishes that any fact "legally essential to the punishment" must be proven beyond a reasonable doubt to a jury or admitted

by the defendant. **Id at 9.**

As petitioner was a bona fide resident of Apprendi land when his conviction was obtain, the indictment fail to list a specific quantity and most importantly petitioner did not admit to a quantity, the court impermissibly found petitioner to be accountable for five kilograms of cocaine. As such, petitioner's Due Process and Sixth Amendments rights were violated by the Court. And, as the Court explained the judge exceeded its jurisdiction in sentencing petitioner to a 110 months.

Wherefore, premises being reconsidered this Court is duty bound to apply the law as warranted and grant the writ herein and Vacate petitioner's sentence of 110 months and sustain petitioner's objection as advanced in his objection to the Pre Sentence Report and his initial petition and imposed a term of 10 months.


PETITIONER FURTHER SYAETH NAUGHT


Respectfully submitted,

Charles M. Llewlyn


9

Drug Enforcement Administration

REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZE

| 1. HOW OBTAINED (Check) | 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|---|

1. HOW OBTAINED (Check)
☐ Purchase  ☒ Seizure  ☐ Free Sample
☐ Lab. Seizure  ☐ Money Flashed  ☐ Compliance Sample (Non-Criminal)
☐ Internal Body Carry  ☐ Other (Specify)

2a. FILE NO.
GS-00-0057

| 4a. WHERE OBTAINED (City, State/Country) | 4b. DATE OBTAINED | 5. FILE TITLE |
|---|---|---|
| Sunrise, Florida | 01/14/2000 | LLEWYLN, Charles M. |

| 6a. REFERRING AGENCY (Name) | 6b. REFERRAL | | |
|---|---|---|---|
| N/A | ☐ Case No. OR  ☐ Seizure No<br>No. N/A | 7. DATE PREPARED<br>01/18/2000 | 8. GROUP NO.<br>TF-1 |

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| 2 | | cocaine powder | One kilogram shaped package wrapped in duct tape | | 1704.6g | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | latent fingerprint analysis requested | | | | |

16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG?  ☐ NO (included above)  ☒ YES (if Yes, enter exhibit no. and describe original container fully)

19. NO. PACKAGES
1 PSEE

22. SEAL
☐ Broken  ☒ Unbroken

LABORATORY REPORT

ANALYSIS SUMMARY AND REMARKS

111143

Exhibit 2 cntains: No analysis performed.
Gross Wt: 1706g    Net Wt: n/a


-Original packaging submitted for fingerprints.
-Photographs taken.


amp 3/24/00

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 2 | 111143 | no controlled substance | n/a | | | n/a | n/a |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| 35. TITLE | 36. DATE COMPLETED |
|---|---|
| Forensic Chemist | 3/22/00 |

| 38. TITLE | 39. LAB. LOCATION |
|---|---|
| Laboratory Director | Miami, FL |

(Sept. 1995)    Previous edition dated 4/90 may be used until stock is exhausted.    1 - Prosecution

# REPORT OF INVESTIGATION

Page 1 of 1

| 1. Program Code | 2. Cross | Related Files | 3. File No. | 4. G-DEP Identifier |
|---|---|---|---|---|
| N/A | File | | GS-00-0057 | |

| 5. By: TFO ███████████ | | 6. File Title |
|---|---|---|
| At FT. LAUD. DO | ☒ ███████ | LLEWYLN, Charles |
| TASK FORCE 1 | ☐ | |
| | ☐ | |
| | ☐ | |

| 7. ☐ Closed   ☐ Requested Action Completed | ☐ | 8. Date Prepared |
|---|---|---|
| ☐ Action Requested By: | | 04/03/00 |

9. Other Officers:

10. Report Re: FINGERPRINT REPORT

## DETAILS

1.  Reference is made to DEA 6, dated January 14, 2000, by TFO ████████
    ██████████ , RE: Arrest of LLEWYLN, Charles, et al.

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

3.  The package was believed to be a kilogram of cocaine and was sent,
    undisturbed, to the DEA Lab in Miami for analysis and fingerprinting.

4.  On April 3, 2000, TFO ██████████████ received a letter from DEA
    Fingerprint Specialist ████████████████ stating that "no latent prints
    suitable for identification purposes were present or developed".

## INDEXING

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

| 11. Distribution: | 12. Signature (Agent) | 13. Date |
|---|---|---|
| Division MIAMI FD - DIG | | 04/03/00 |
| District | | 15. Date |
| Other   HQS: SARI | | 04/03/00 |

DEA Form   - 6
(Jul. 199

DEA SENSITIVE

**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

Certificate of Service


    I the undersigned hereby declare pursuant to Title 28 United States Code Section 1746 that on September 21, 2004, I deposited the  foregoing instrument with adequate postage to effectuate delivery via U.S. First Class Mail to:


        AUSA Roger Steffin, Esquire
        United States Attorney's Office
        500 East Broward Boulevard
        Ft. Lauderdale, Fl 33301


        Submitted by,

        Charles M. Llewlyn, #60206-004
        Jesup FCI
        2680 Highway 301 South
        Jesup, GA 31599